IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAHUL TELANG and ASHWINI GANDHE, husband and wife, | Civil Action No. 2:19 – cv – 01025 – WSH |
| Plaintiffs, | |
| vs. | The Honorable: W. Scott Hardy |
| NVR, INC. t/d/b/a RYAN HOMES, | |
| Defendant. | **JURY TRIAL DEMANDED** |

<u>**PLAINTIFFS' RESPONSES TO NVR, INC.'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF NVR, INC.'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS**</u>

AND NOW come the Plaintiffs, Rahul Telang and Ashwini Gandhe, by and through their undersigned counsel, and hereby file in support of their opposition to NVR, Inc.'s Motion for Summary Judgment the following Plaintiffs' Responses to NVR, Inc.'s Concise Statement of Material Facts and Plaintiffs' Separate and Concise Statement of Material Facts that Present Genuine Issues for Trial:

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Denied. As stated in Exhibit E, Section 3(c), the Seller ("NVR") had the sole discretion to note and correct any deficiencies. Further, Plaintiffs had contracted with NVR for the construction

of a Highgrove Version 7 home; however, NVR constructed and sold to Plaintiffs, without their prior

approval or knowledge, a Highgrove Version 9 home.  (Exhibit E, Section 1).

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Admitted.

24.     Admitted.

25.     Admitted.

26.     Denied. The Borough only sends the builder a letter if the Borough finds a deficiency. (Ex. 1, p. 44). For instance, in the present case, NVR did not attach any mechanical drawings to its building permit application and thus the Borough could not make a determination as to whether the drawings complied with the 2006 International Residential Code. (Ex. 2, p. 22 and Ex. 1, p. 122). In fact, the Borough has never denied a builder a building permit. (Ex. 1, p. 45).

27.     Denied. The Borough issues a building permit if it does not determine any violations contained within the drawings submitted. However, such as in the present situation, the Borough does not always receive all necessary drawings, does not know whether the HVAC system is in compliance with the 2006 International Residential Code, and still issues a building permit. (Ex. 1, pp. 122, 135-138, and 141).

28.     Admitted.

29.     Denied. It contained some, but not all, of the construction drawings. (Ex. 2, p. 22).

30.     Denied. The Borough had adopted the 2006 International Residential Code. As to the drawings submitted by NVR, they violated the 2006 International Residential Code as they did not provide for a railing around the platform which is required by the 2006 International Residential Code and they did not comply with the HVAC's manufacturer's installation instructions which is also violative of the 2006 International Residential Code. (Ex. 3, p. 55, § 312.1 and p. 329, § M1307.1; and Ex. 4, Ex. 5 and Ex. 6).

31.     Admitted.

32.     Admitted.

33.     Denied. This is not a statement of fact, but rather an opinion on the interpretation of the word "floor" in the 2006 International Residential Code, which is the subject of expert testimony. Further, it was the interpretation of an unidentified individual without any foundation for their

background and experience to render such an opinion and interpretation. Plaintiff's experts, Anthony Shinsky and Dr. Michael Stichter, both opined that the attic floor is a "floor" as defined by the 2006 International Residential Code. (Ex. 5 and Ex. 6).

34.     Admitted to the extent that the code opinion otherwise satisfies the Federal Rules of Evidence with respect to expert testimony.

35.     Admitted to the extent that the code opinion otherwise satisfies the Federal Rules of Evidence with respect to expert testimony.

36.     Admitted.

37.     Admitted.

38.     Admitted.

39.     Denied. The Borough only conducts "cursory" inspections. (Ex. 1, p. 53). Further, the inspector may not possess the knowledge or expertise to determine whether the as-built attic is compliant with the International Residential Code. (     ). Additionally, the International Residential Code requires that the builder comply with any appliance manufacturer's installation instructions. (Ex. 1, pp. 135-36). The Borough, however, does not review the installation instructions. (Ex. 1, pp. 137-38). Lastly, the Borough did not know whether the attic was ever inspected. (Ex. 1, p. 141).

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Denied. This is not a statement of fact, but rather a legal conclusion. By way of further response, the as-constructed attic violated at least two provisions of the 2006 International Residential

Code. (1) It did not contain railings around the exposed edges. (2) It did not comply with the HVAC manufacturer's instructions to place the filters behind 2nd floor return air registers. The 2006 International Residential Code requires that all manufacturer's instructions be followed. (See Plaintiffs' Response to Concise Statement of Material Facts #30).

      46.     Admitted.

      47.     Admitted.

      48.     Admitted.

      49.     Admitted.

      50.     Admitted.

      51.     Admitted.

      52.     Admitted.

      53.     Admitted.

      54.     Admitted.

      55.     Admitted.

      56.     Admitted.

      57.     Admitted.

      58.     Denied. Plaintiffs averred that Dr. Telang was in the attic to replace the HVAC filter. (See Plaintiffs' Complaint, ¶ 25).

      59.     Admitted.

      60.     Admitted.

      61.     Admitted.

      62.     Admitted.

      63.     Admitted.

64.     Admitted.

65.     Admitted.

66.     Admitted.

67.     Admitted.

68.     Admitted.

69.     Admitted.

70.     Admitted.

71.     Admitted.

72.     Admitted.

73.     Admitted.

74.     Admitted.

75.     Admitted.

76.     Admitted.

77.     Admitted.

78.     Admitted.


**PLAINTIFFS' SEPARATE AND CONCISE STATEMENT OF MATERIAL FACTS**

1.      NVR typically submitted mechanical drawings to its HVAC contractors demonstrating how the HVAC system should be installed and where the air filters should be located. (Ex. 7 and Ex. 8).

2.      The air filters are to be located behind the 2nd floor return air register so that a homeowner does not have to go into the attic to change the filter. (Ex. 7, Ex. 8, and Ex. 2, pp. 16-18).

3.      NVR did not create a mechanical drawing for the Telangs' home and skipped this step because they were transitioning away from the Highgrove Model 9. (Ex. 2, pp. 22, 27, 79-81, 85).

4.     The HVAC manufacturer's installation instructions recommended the return air filter be placed behind the central return air register. (Ex. 4 and Ex. 6).

5.     NVR, by recommendation of its Safety Committee, began placing a safety railing around the perimeter of the platform for safety reasons in 2009, 10 years before the subject incident. (Ex. 9, pp. 62, 64, 73).

6.     NVR estimates that it is less than $10.00 to install the safety railing. (Ex. 2, p. 88).

7.     It is not standard for NVR to show the homeowners how the HVAC system in the attic operates. (Ex. 10, pp. 43-45).

Respectfully Submitted By:

/s/ Brendan B. Lupetin
Brendan B. Lupetin, Esq.
blupetin@pamedmal.com
Lupetin & Unatin, LLC
707 Grant Street, Suite 3200
Pittsburgh, PA 15219

/s/ Jonathan M. Gesk
Jonathan M. Gesk, Esq.
jgesk@gesklaw.com
Gesk Moritz, LLC
14 E. Main Street
Carnegie, PA 15106

Date:   January 10, 2022